## IN THE UNITED STATES DISTRICT COURT FOR MARYLAND SOUTHERN DIVISION

**STANLEY SHAPIRO**
on behalf of himself and
others similarly situated

     Plaintiff

     v.                                     Case No. 8:24-cv-01667

**QUINSTREET, INC.**

     and

**SELECTQUOTE AUTO & HOME INSURANCE SERVICES**
3500 W 75th Street, Suite 110
Prairie Village, KS 66208

     Serve:
     Cogency Global Inc.
     1519 York Road
     Lutherville, MD 21093

     Defendants

## AMENDED COMPLAINT UPON REMOVAL – CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Stanley Shapiro, individually and on behalf of all others similarly situated, files this amended complaint against Defendants, QuinStreet, Inc. ("QuinStreet") and Selectquote Auto & Home Insurance Services ("Selectquote") and states as follows:

## NATURE OF ACTION

1.      This case arises from telemarketing calls by and on behalf of Defendants, directed to Plaintiff and the Class Members to encourage and promote the purchase of insurance products and services. ("the Calls")

2.      The Calls were initiated by Defendants and their agents in disregard of do-no-call lists (47 U.S.C. §227(c)(5) and 47 C.F.R. §64.1200(c)(2)), using pre-recorded voicing (47 C.F.R. §

64.1200(a)(2), without the recipients' prior express written consent (id.), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and its regulations, and in violation of state statutes.

3.      This case was originally filed in the Maryland District Court for Montgomery County using abbreviated pleading on that court's civil complaint form.  The case was removed from state court by Quinstreet.

4.      Plaintiff seeks class relief under FRCP 23(b)(3) and seeks injunctive relief under FRCP 23(b)(2).

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C.§ 227 et seq.

6.      This Court has personal jurisdiction over Defendants because they regularly conduct business in Maryland, direct the solicitation of business to individuals in this state, and purposefully avail themselves of the laws of this state.

7.      Venue is proper because Plaintiff resides in, and received the calls in, this District, and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action was commenced.

## PARTIES

8.      At all times relevant to this action Plaintiff was an individual residing in Maryland.

9. At all times relevant to this action Defendant QuinStreet was a corporation formed under the laws of Delaware, maintaining its principal offices in California.

10. At all times relevant to this action Defendant Selectquote was a corporation formed under the laws of Delaware, maintaining its principal offices in Kansas.

**APPLICABLE LAW**

The Telephone Consumer Protection Act Of 1991 (TCPA), 47 U.S.C. § 227

11.“Americans passionately disagree about many things. But they are largely united in their disdain for robocalls.” *Barr v. Am. Ass'n of Pol. Consultants, Inc*., 140 S. Ct. 2335, 2343 (2020). Congress enacted the TCPA in 1991 because it found “[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes,” which they “rightly regarded…as 'an invasion of privacy.'” *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting the TCPA §2, 105 Stat. at 2394 (bracketed alterations in original)); see *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264–65 (11th Cir. 2019).

12.     The TCPA was enacted in response to Americans' growing frustration with repeated telemarketing calls.[1]  *Krakauer v. Dish Network, LLC*, 925 F.3d 643, at 663 (4th Cir. 2019). Among other proscribed practices, the TCPA prohibits “mak[ing] any call... using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone service” without “prior express consent of the called party.” 47 U.S.C. § 227(b) (1)(A) (iii). If an “automatic telephone dialing system” or “artificial or prerecorded voice” is being used for “any telephone call that includes or introduces an advertisement or constitutes telemarketing,” the caller must have the “prior express written consent of the called party.” 47 C.F.R. § 64.1200(a)(2) (emphasis added).  *Bradley v. Dentalplans.com*, Civil 20-1094-BAH, 7 (D. Md. Jun. 6, 2024), 2024 WL 2865075.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201*et seq.*

13.     Thousands of consumers have complained to federal and state government agencies, and to callers, that unsolicited telemarketing communications, including calls, faxes and texts, interrupt their work and private activity, intrude upon their time and privacy, and consume their resources.

14.     Section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number absent an emergency, or absent express the prior written consent of the called party.

<u>**The Maryland Telephone Consumer Protection Act**</u>

15.     The State of Maryland adopts federal statutes in prohibiting certain telemarketing practices as follows:

A person may not violate:

(1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or

(2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

Maryland Commercial Code §14-3201.

16.     Maryland has created a private cause of action for violations of §14-3201, *supra*, as follows:

(a) A violation of this subtitle is an unfair or deceptive trade practice within the meaning of Title 13 of this article and is subject to the enforcement and penalty provisions contained in Title 13 of this article.

(b) In addition to the remedies provided in §13-408 of this article, an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover:

(1) Reasonable attorney's fees; and

(2) Damages in the amount of the greater of:

(i) $500 for each violation; or

(ii) Actual damages sustained as a result of the violation.

(c) For purposes of this section, each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation.

Maryland Commercial Code §14-3202.

17.     Maryland thus clarifies that multiple claims can arise from a single violation.  Maryland further provides that a plaintiff may recover attorney's fees.

18.     The Telemarketing Sales Rule, referenced in 14-3201(1), supra, provides in relevant part:

§ 310.4 Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this part for any seller or telemarketer to engage in the following conduct:

. . .

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call . . .

19.     Section §13-408 of the Commercial Law Article of the Maryland Code (referenced above in §14-3202(b)) provides for a private cause of action.

**PRE-RECORDED VOICING**

20.     Congress found that automated and prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls due to the massive quantities of calls possible via such automation.

21.     Congress vested the Federal Communications Commission with authority to issue regulations implementing the TCPA.

22.     The FCC has recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

23.     The receipt of an unsolicited call in violation of the TCPA is sufficient to confer standing not only for do-not-call list violations, *Krakauer* at 653, but also for unsolicited call violations generally. *Bradley*, slip opinion at 8.  "The statute requires that an individual receive a call on his own... number.... There is nothing ethereal or abstract about it.... Since that harm is both particular to each person and imposes a concrete burden on his privacy, it is sufficient to confer standing." Id.

## PRIOR EXPRESS WRITTEN CONSENT

24.     The FCC defines prior express written consent as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

25.     Under the TCPA, prior consent is an affirmative defense for which the defendant bears the burden of proof.  *Bradley*, at 10.

26.      Telemarketing calls under the TCP A require a higher standard of consent, "prior express written consent," than non-telemarketing calls. Id. at 11; 47 C.F.R. § 64.1200(a)(2).  The latter need merely "prior express consent." 47 C.F.R. § 64.1200(a)(1).

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003)

27.     The "prior express written consent" required for telemarketing calls must also be "clear and conspicuous."  47 C.F.R. § 64.1200(f)(9)(i).

28.     Under the TCPA, "[t]he term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13).  Telemarketing includes "winback" calls to renew an expired or terminated customer account, and such calls require prior express written consent.  Bradley at 11.

29.     A voice recording is insufficient to provide the disclosure component of the consent required for telemarketing calls. Id. at 19.

### VICARIOUS LIABILITY; APPARENT AUTHORITY

30.     The FCC issued a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[3] This vicarious liability may apply if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

---

[3] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").  Regarding vicarious liability the FCC stated in part,

> . . . The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller

31.     The FCC has rejected the assertion that a seller's liability requires a finding of formal

agency and immediate direction and control over the third-party who placed the telemarketing

call. *Id.* at n.107.

 32. The May 2013 FCC Ruling further clarifies a seller's liability via apparent authority:

>        [A]pparent authority may be supported by evidence that the seller allows
> the outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information

33.     Defendants are legally responsible for ensuring that their calling vendors comply with the

TCPA, even if Defendants did not directly make the calls.

34.     The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory

Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

35.      The FCC expects that called parties may obtain "evidence of these kinds of relationships .

. . through discovery, if they are not independently privy to such information. " May 2013 FCC

Ruling, *supra*, at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent

authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer

was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## DO NOT CALL REGISTRY

36.     The National Do Not Call Registry ("Registry"), which is managed by the Federal Trade

Commission, allows consumers to register their telephone numbers and thereby indicate their

desire not to receive telephone solicitations on those numbers. See 47 C.F.R. § 64.1200(c)(2).

---

failed to take effective steps within its power to force the telemarketer to cease
that conduct.

28 F.C.C.R. at 6592 (¶ 46).

37.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

38.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against those making such calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## ALLEGATIONS OF FACT

### Facts Related to Plaintiff

39.     Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

40.     Since 2003 or earlier Plaintiff has been the exclusive subscriber and user of the cellular telephone number 301-xxx-1979 and Verizon has been the service provider.

41.     Since 2003 Plaintiff's cellular number, above, has been on the Federal Trade Commission's Do Not Call Registry.

42.     On July 13, 2023 at 10:05 a.m. Plaintiff received a telephone call on his cell phone showing 301-xxx-5907 on the caller ID display.  Plaintiff saw that number, believed that the call might actually be from a local caller who was not a telemarketer, and answered it.  Upon information and belief, the number shown on the caller ID did not belong to the caller and was intended to deceive Plaintiff into answering the call.

43.     Upon answering the call Plaintiff heard a robotic voice talking about Medicare Parts A and B.  Plaintiff determined that the voice as artificial because of its unnatural intonation, its unnatural cadence, and the mechanical and overly precise phonetic pronunciation of certain words.

44.     Plaintiff is a native speaker of American English, is reasonably familiar with American conversational intonations and pronunciations, and is reasonable facile at detecting foreign accents.

45.     To try to learn the true identity of the calling organization Plaintiff stayed on the call and was transferred to a male human who identified himself as "Samuel" and spoke with a foreign accent, which Plaintiff believes was Indian.  Samual asked Plaintiff for certain information pertaining to insurance coverage, and Plaintiff answered in order to direct the conversation toward identification of the calling organization.  Samuel said he would call again later.

46.     At 3:37 p.m. on July 13, 2023 Plaintiff received a call on his cell phone showing a caller ID of "301-xxx-2839 HLY CROSS GT HOS" suggesting it was from a well-known local hospital. The caller ID did not suggest in any way that the call was from Samuel or any organization that might have been associated with him.  Again relying on the caller ID information, Plaintiff answered the call and an adult male spoke, identifying himself as "Samuel," speaking with the same voice and accent as the individual on the 10:05 a.m. call. Samuel repeated information from the earlier call, further confirming that he was the same individual.

47.     Samuel asked Plaintiff to answer "yes" to a scripted question that Samuel described as a waiver of federal and state laws regarding telemarketing.  Plaintiff declined to do so.

48.     The second call was eventually transferred to an adult male who identified himself as Heath Raynor, a "licensed health insurance agent for Selectquote," who gave Plaintiff the contact number 855-xxx-3489, which indeed appears on a website for Selectquote at https://www.selectquote.com/contact-us. Last viewed July 15, 2024.

49.     Plaintiff terminated the call with Mr. Raynor without making a purchase.

50.    Plaintiff never gave express prior written consent to Selectquote or to anyone else for the initial call of July 13, 2023 described above, or for any automated calls from Selectquote or its affiliates, or for any calls that contain automated voicing.

51.    Plaintiff has received numerous calls similar to the first call on July 13, 2023 described above, containing pre-recorded voicing, promoting Medicare A and B plans, within 12 months of the call of July 13, 2023.

52.    During the initial telemarketing calls received by Plaintiff that promote insurance products, prior to any transfer to a live agent, the true identities of the callers and the vendors on whose behalf the calls are made were not disclosed.  The automated call of July 13, 2023, was an exception in that it was followed by live conversations that led to a disclosure of the name, Selectquote.  Discovery is necessary to confirm and/or identify the parties responsible for the front-line violative calls, and the relationships among those responsible for the calls.

53.    Upon information and belief, the calls to Plaintiff's cell phone promoting insurance products were caused, initiated and/or generated by Defendants Selectquote and QuinStreet, both of whom use telemarketing with automated voicing to promote identical or similar insurance plans under Medicare A and B, transfer auto-generated calls to live agents, employ similar scripts, use follow-up calls and sell the same products.

## SELECTQUOTE

54.    The Form 10-K filed for Selectquote with the Securities and Exchange commission for the year ending June 30, 2023 states: "We are a leading technology-enabled, direct-to-consumer ("DTC") distribution platform for insurance products and healthcare services. . . . for Medicare Advantage ("MA") and Medicare Supplement ("MS") insurance plans . . .  MA and MS plans accounted for 89%, 82%, and 78% of our approved Senior policies for the years ended June 30,

2023, 2022, and 2021, respectively . . ."

https://s23.q4cdn.com/545595037/files/doc_financials/2023/ar/slqt_2023_10k.pdf

(Last viewed July 15, 2024.)

55.     Selectquote is not an insurance company and does not issue insurance policies.  (". . . because we are not the issuer of the insurance policy to the consumer, we bear no underwriting risks."  Id. at 4.)

56.     Plaintiff has never given express prior written consent to Selectquote or to anyone else for the initial call of July 13, 2023 described above, or for any automated calls from Selectquote or its affiliates, or for any calls that contain automated voicing.

**QUINSTREET**

57.     QuinStreet operates and controls a network of entities engaged in lead generation:

"t) '**QS Network'** means collectively websites, call centers and email service providers owned by QS, its corporate affiliates and QS' network of third party publishers. QS has sole discretion over the selection of publishers to the QS Network . . ."  Exhibit A.

58.     QuinStreet has identified its corporate affiliates.  ECF No. 7.

59.     QuinStreet engages service providers that include "Publishers," who gather customer information including "call leads." ("Publisher may generate Leads for QS through a QS Implementation or a Publisher Implementation . . .")  Exhibit B.

60.     QuinStreet advertises, "We match consumers to carriers and agents in auto, home, health, life, and other insurance verticals." Exhibit C.

61.     QuinStreet owns Insure.com and Insurance.com, which list the same office address as QuinStreet, and market Medicare A and B insurance plans similar to those promoted in the call of July 13, 2023.

See www.insure.com and www.insurance.com.  Last viewed July 15, 2024.

62.     QuinStreet's form 10k filed with the Securities and Exchange Commission for the year ending June 30, 2023 states, "We are predominantly paid on a negotiated or market-driven "per click," "per lead," or other "per action" basis that aligns with the customer acquisition cost targets of our clients. . . . . Our media sources include . . . social media and mobile programs, . . .  call center operations, . . . and more." https://investor.quinstreet.com/static-files/1806764c-b747-49f3-8c85-a675fb20f59d

At pg. 4.  Last viewed July 16, 2024. [Emphasis added.]

63.     Upon information and belief, Selectquote engages QuinStreet to provide or collaborate in telemarketing to obtain "call leads."

64.     Upon information and belief, Selectquote and Quinstreet acted jointly, in collaboration and in a joint venture, and generated and placed the automated call of July 13, 2023 to Plaintiff.

65.     Upon information and belief, Selectquote and Quinstreet acted jointly, in collaboration and in a joint venture, and generated and placed the Calls, including numerous automated calls to Plaintiff and the Class Members promoting insurance products, including several calls within 12 months of July 13, 2023.   The Calls used automated voicing and were made to recipients whose numbers were registered in the Registry

66.     At all times relevant to this action Selectquote and QuinStreet acted as agents for each other.

## CLASS ALLEGATIONS

67.     The calls to Plaintiff and the Class Members were placed to cellular telephones by an "automatic telephone dialing system" for non-emergency purposes and in the absence of the recipients' prior express written consent, in violation of 47 U.S.C. § 227(b)(1)(A).

68.     Defendants have the burden of proving any prior express written consent by Plaintiff and Class members within the meaning of the statute.

69.     Thousands of the calls to Class Members went to cellular telephones.

70.     Defendants failed to ascertain whether Plaintiff and the Class Members were on the Do Not Call Registry.

71.     Defendants acted carelessly and negligently in failing to obtain the required express prior written consents for the calls.

72.     Defendants acted carelessly and negligently in failing to ascertain whether Plaintiff and the Class Members were on the Do Not Call Registry.

73.     Plaintiff alleges in the alternative that Defendants acted willfully and knowingly in causing the calls to be initiated as described above, and in ignoring the Registry.

74.     Defendants knew that the calls were in violation of the TCPA and  accepted benefits, including sales, that resulted from the calls, thereby ratifying and assuming responsibility for the calls.

**75.**     Defendants have been previously sued for TCPA violations arising from the same type of activity alleged here, and are fully aware of the statutory requirements as alleged above.

## CLASS DEFINITIONS

76.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

77.     Plaintiff brings this action individually and on behalf of all other persons similarly situated with regard to the classes identified below, pursuant to FRCP 23.

78.     "Class" generically means all of the three classes defined below.

79.     "Class Member" generically means a member of any of the three defined classes.

80.     "DNC Class Member" means a member of the DNC Class as defined below, and this principle applies to all of the defined classes.

81.     Plaintiff seeks class certification pursuant to FRCP 23 of the following classes:

    a.  The Do Not Call (DNC) Class;

    b.  The Pre-Recorded Voice Class;

    c.  The Maryland Class.

### a.  THE DO NOT CALL CLASS

82.  The class concerning the National Do-Not-Call violation (47 C.F.R. § 64.1200(d));
(hereafter "The DNC Class") is defined as follows:

> All persons within the United States who, at the time of the call, had been
> registered on the National Do-Not-Call Registry for at least 30 days, had not
> granted a Defendant prior express consent, had no prior established business
> relationship with a Defendant, and received more than one call made by or on
> behalf of a Defendant that promoted that Defendant's products or services during
> any twelve-month period, and the call was within four years prior to the filing of
> the complaint.

83.     Plaintiff believes and therefore alleges that the members of the DNC Class
number in the thousands.

### b. THE PRE-RECORDED VOICE CLASS

84.  The class concerning pre-recorded voice calls is defined as follows:

> All persons in the United States to whom Defendants made one or more calls
> for the purpose of encouraging the purchase of insurance within four years
> prior to the filing of this suit, using a pre-recorded voice, without prior
> express written consent from the recipient.

85.     Plaintiff believes and therefore alleges that the members of the Pre-recorded Voice Class
number in the thousands.

### c.      THE MARYLAND CLASS

86. The Maryland class concerning pre-recorded voice calls is defined as follows:

All persons in Maryland to whom Defendants made one or more calls for the

purpose of encouraging the purchase of insurance within four years prior to the

filing of this suit, using a pre-recorded voice, without prior express written

consent from the recipient, or without providing accurate caller ID information

including the name of the caller and the originating number of the call.

87. Plaintiff believes and therefore alleges that the members of the Maryland Class number in

the hundreds or thousands.

### ADDITIONAL CLASS ALLEGATIONS

88. Excluded from the Classes are Defendants and their affiliated entities, Defendants' agents

and employees, any judge to whom this action is assigned and any member of such judge's

staff and immediate family.

89.  Plaintiff and all members of the Class have been harmed by the acts of Defendants because

their privacy has been violated, they were subject to annoying and harassing calls that

constitute a nuisance, and many were charged for incoming calls.

90. This Class Action Complaint seeks injunctive relief and money damages.

91. The joinder of all Class members is impracticable due to the size and relatively modest

value of each individual claim.

92. The disposition of the claims in a class action will provide substantial benefit to the parties

and the Court in avoiding a multiplicity of nearly identical suits.

93. The Class is ascertainable through records in the possession of Defendants, their agents and

affiliates, and in the possession of contractors and the communications carriers who carried

the transmissions. QuinStreet has confirmed that it consulted transmission records regarding Plaintiff's claims.

94. There are well-defined, nearly identical, questions of law and fact affecting all of the parties.

95. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

96. Such common questions of law and fact include, but are not limited to, the following:

    a.    Whether Defendants used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

    b.    Whether Defendants used an artificial or prerecorded voice in its non-emergency calls to Class members' cell phones;

    c.    Whether Defendants engaged in telemarketing activities without first obtaining prior express written consent (i.e., written consent that is clearly and unmistakably stated);

    d.    Whether Defendants can meet their burden of showing they obtained prior express written consent (i.e., written consent that is clearly and unmistakably stated), to make such calls;

    e.    Whether Defendants' conduct was knowing and/or willful;

    f.    Whether Defendants are liable for statutory damages; and

    g.    Whether Defendants should be enjoined from engaging in such conduct in the future.

97.    As a person who received non-emergency telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without prior express written consent to

Defendants within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

98.     As a person who received more than one call within a twelve month period to his cellular phone number that had been previously registered with the National Do Not Call Registry, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

99. Plaintiff will fairly and adequately represent and protect the interests of the Class.

100.     Plaintiff has no interests which are antagonistic to any member of the Class.

101.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

102.     A class action is the superior method for the fair and efficient adjudication of this controversy.

103.     Class wide relief is essential to compel Allstate to comply with the TCPA.

104.     The interest of the Class members in individually pursuing claims against Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendants from engaging in the same behavior in the future.

105.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such calls to their cellular telephones.

106.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

107.    Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

108.    Plaintiff seeks class relief under FRCP 23(b)(3) and injunctive relief under FRCP 23(b)(2).

109.    The TCPA provides for damages of the greater of $500 per violation or actual damages; and empowers the Court to award up to treble damages if the violative conduct was knowing or willful. 47 U.S.C. § 227(b)(3)(B).

## COUNT I – DO NOT CALL VIOLATIONS

110.    The allegations above are hereby incorporated by reference.

111.    Defendants violated the TCPA, 47 U.S.C. § 227(c)(5) and (47 C.F.R. § 64.1200(d)) by causing the transmission of telephone calls for the purpose of encouraging the purchase of insurance products, to Plaintiff and other members of the DNC Class, more than once within a 12-month period, despite the fact that those recipients' numbers were on the Registry.

112.    The DNC Class is ascertainable via automated means using Defendants' call data, service providers' call data and the Registry.

113.    WHEREFORE, Plaintiff seeks judgment against Defendants QuinStreet and Selectquote for himself and for the DNC Class in the amount of $500 for each violation, $1,500 for each violation found to be knowing or willful, attorneys' fees, costs and such other relief as the Court finds just.

## COUNT II – THE PRE-RECORDED VOICE CLASS

114.    The allegations above are hereby incorporated by reference.

115.    Defendants caused the Calls without having prior express written permission of Plaintiff and the members of the Pre-Recorded Voice Class, in violation of 47 U.S.C. § 227(b)(1)(A).

116.    Defendants' failure to obtain prior express written permission for the Calls was careless and negligent.

117.    Plaintiff alleges in the alternative that Defendants' failure to obtain prior express written permission for the Calls was knowing or willful.

118.    WHEREFORE, Plaintiff seeks judgment against Defendants QuinStreet and Selectquote for himself and for the Pre-recorded Voice Class in the amount of $500 for each violation, $1,500 for each violation found to be knowing or willful, attorneys' fees, costs and such other relief as the Court finds just.

## COUNT III – THE MARYLAND CLASS

119.    The allegations above are hereby incorporated by reference.

120.    Defendants violated Maryland Commercial Code §14-3201 by violating the TCPA in at least the following ways:

      a.    Failure to obtain the required consent for the Calls;

      b.    Sending the Calls to numbers on the Registry;

      c.    Failure to use accurate caller ID information including the name of the caller and the number from which the call was sent.

121.    WHEREFORE, Plaintiff seeks judgment against seeks judgment against Defendants QuinStreet and Selectquote for himself and for the Maryland Class in the amount of $500 for each violation, $1,500 for each violation found to be knowing or willful, attorneys' fees, costs and such other relief as the Court finds just.

## COUNT IV – INJUNCTIVE RELIEF

122.    The allegations above are hereby incorporated by reference.

123.    Plaintiff avers that the conduct alleged above in violation of the TCPA is likely to continue, causing intrusion, interruption and outrage among the public, as recognized by Congress as a compelling

basis for the TCPA and its regulations.  Plaintiff therefore request injunctive relief pursuant to FRCP 23(b)(2).

124.     Plaintiff requests an order prohibiting Defendants and their affiliates and agents from a) causing the transmission of telemarketing calls using a pre-recorded voice without the prior express written consent of the intended recipient of the call; b) causing the transmission of telemarketing calls to telephone numbers that are registered on the National Do Not Call Registry maintained by the Federal Trade Commission; and c) causing the transmission of telemarketing calls without disclosing to the recipient of the call the true identity of the organization making the call and the telephone number from which the call was originated.

125.     Plaintiff requests costs, attorney's fees and such additional relief as the Court deems just in connection with the injunctive relief sought in this count.

## CONSOLIDATED PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     An order enjoining Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance; enjoining Defendants from making calls with pre-recorded voicing; and enjoining Defendants from using false caller ID information.

E.     An award to Plaintiff and the Classes of damages, as allowed by law; and

F.     Such other and further relief as the Court deems necessary, just, and proper.

_____/s/_____
Stephen H. Ring
STEPHEN H. RING, PC
401 North Washington Street, Suite 500
Rockville, Maryland 20850
(301) 563-9249
USDC-MD Attorney No. 00405
shr@ringlaw.us
Attorney for Plaintiff and the Proposed Classes

## JURY DEMAND

Plaintiff requests a trial by jury as to all issues so triable.

_____/s/_____
Stephen H. Ring

## CERTIFICATE OF SERVICE

I certify that copies of this document and its attachments were sent on the date stamped on them by the Court, to the following:

Ira T. Kasdan (Bar # 26942)
3050 K Street, NW
Washington, DC 20007
Email: ikasdan@kelleydrye.com

James B. Saylor (*pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Email: jsaylor@kelleydrye.com

_____/s/_____
Stephen H. Ring